UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEARBORN LODGING, INC., d/b/a METRO INN,

        Plaintiff,

                                          Case number 11-10057
v.                                           Honorable Julian Abele Cook, Jr.

CITY OF DEARBORN,

        Defendant.

ORDER

In this case, the Plaintiff, Dearborn Lodging, Inc., d/b/a Metro Inn, alleges that the Defendant, the City of Dearborn ("City"), violated its Fourth, Fifth, and Fourteenth Amendment rights when it ordered the demolition of a group of buildings that compose the Metro Inn, on the basis of its findings that (1) they are dangerous buildings, and (2) the estimated costs of repair exceeded their state equalized value. Currently pending before the Court is the City's motion for the entry of a summary judgment. Fed. R. Civ. P. 56.

I.

The Metro Inn is located on Michigan Avenue in Dearborn, Michigan. The property under scrutiny consists of six buildings which have been designated by the as A, B, C, D, E, and the restaurant and pool building. In 2001, Nofar Brothers, Inc., the then-owner of the hotel, sued the City for an alleged wrongful taking. This litigation resulted in an order which directed the City to (1) conduct an inspection of the property, and (2) issue a Certificate of Occupancy if and when the Metro Inn owners satisfied an itemized list of required repairs. Five years later, Nofar Brothers filed

a motion to show cause in which it sought to obtain an injunctive relief against the City. No hearing was held.

The Plaintiff, Dearborn Lodging, succeeded Nofar Brothers as the owner of the commercial real estate in December 2003 and of the hotel in June 2007. Buildings D and E have been closed since 2004 as a result of fire damage, and building C has been closed since 2006.

The City's Building & Safety Department performed a full inspection of the site in April of 2007, which resulted in the compilation of a list of several hundred necessary repairs, many of which required the issuance of permits before they could be undertaken. (Woodcock Rep., Copy at Ex. 23 to Def.'s Mot. for Summ. J.). In response to this report from the City's inspector, the Plaintiff retained a number of architects and engineers to submit plans that would address the concerns therein. Noting that several of the required areas had not been addressed, the Building & Safety Department rejected the Plaintiff's proposed plans for renovation, and denied its request for related permits.[1] (See Plan Review Denials dated Oct. 18, 2007; Feb. 6, 2008; Mar. 10, 2008; and Apr. 15, 2008, Copies at Ex. 11 to Def.'s Mot. for Summ. J.). One significant area of dispute involved the structural integrity of the outdoor balconies on the second floor of the Metro Inn. The Plaintiff had hired an engineering firm, Testing Engineers & Consultants, Inc. ("TEC"), which determined that - so long as certain recommendations regarding drainage were incorporated into a remodeling plan[2] - the balconies had been properly repaired and were structurally sound. (TEC

---

[1] As will be explained *infra*, the question of the propriety of these determinations is not before the Court.

[2] This recommendation had originally been made by TEC in 2001 but had not, apparently, been acted upon by the time of its 2007 visit or a subsequent visit in 2008. However, TEC characterized this as more of a maintenance and appearance issue than a structural issue.

2

Report, Oct. 2, 2007, Copy at Ex. 9 to Def.'s Mot. for Summ. J.). This conclusion was reiterated in a report issued by TEC in April of 2008.

The URS Engineering firm ("URS"), after being hired by the City to perform an independent review, issued its report in August 2008 wherein it concluded that buildings A, B, and C all qualified as dangerous buildings under the following provisions of Mich. Comp. Laws § 125.539:

> (a) A door, aisle, passageway, stairway, or other means of exit does not conform to the approved fire code of the city, village, or township in which the building or structure is located.
>
> - These buildings met this standard because (1) the stairs did not conform to the required differential distance between the smallest and largest riser heights, and (2) the enclosed space below that stairs was constructed of combustible materials.
>
> (c) A part of the building or structure is likely to fall, become detached or dislodged, or collapse and injure persons or damage property.
>
> - This standard was met because of structural weakness in the balcony floors and rails.

URS also concluded that the restaurant and pool area qualified as a dangerous building under § 125.539(b), which indicates that a building is dangerous if a "portion of the building or structure is damaged by fire, wind, flood, deterioration, neglect, abandonment, vandalism, or other cause so that the structural strength or stability of the building or structure is appreciably less than it was before the damage . . . ." This standard was thought to have been met because the building had been damaged by flooding in the basement. URS also concluded that the cost to repair these four buildings would exceed the state equalized value of the entire Metro Inn property, which had been assessed at $500,000. The cost of repair was estimated to be $317,353.60 for buildings A, B, and

3

C, and $579,786.50 for the restaurant and pool area.[3]

Apparently due to the failure of the Plaintiff to act upon URS' conclusion that the balcony required immediate shoring until a more permanent solution could be found, the City issued a condemnation notice in October 2008, which shut down the entire property. One week later, the Plaintiff initiated a lawsuit in the Wayne County Circuit Court of Michigan ("Wayne Circuit") in which it alleged that the City's actions had violated its constitutional right to due process. After the City removed the action to this Court on the basis of its federal question jurisdiction, the parties, being of the belief that a negotiated resolution between the parties was appropriate, stipulated to the dismissal of the case without prejudice in February 2009. *See* Dearborn Lodging, Inc. v. City of Dearborn, No. 08-14550 (E.D. Mich.). One week later, pointing to the lack of progress in negotiations, the Plaintiff filed an emergency motion seeking the reopening the case and the issuance of a preliminary injunction. After recognizing that the proffered evidence contradicted the Plaintiff's claim that the City had failed to demonstrate good faith during their negotiations, the Court denied the relief sought in March of 2009.

Three days after the Court entered its order, the Plaintiff initiated a new lawsuit in the Wayne Circuit in which it again alleged that the condemnation order was illegal and that the City had unreasonably (1) refused to accept its various proposals for repair and (2) denied its requests for various construction permits.[4] Although the City had caused the case to be removed, the Court

---

[3]URS also found that (1) buildings D and E were dangerous buildings under several different provisions of § 125.539, and (2) the cost of repair of these buildings would be $959,204. However, inasmuch as the Plaintiff has not contested the demolition of these buildings, the Court need not address these findings.

[4]The 2008 and 2009 lawsuits named both Dearborn Lodging and the hotel's owner, Joseph Nofar, as Plaintiffs.

granted the Plaintiff's motion to remand the action to the state court after noting that the allegations within the new complaint were based exclusively on state law. After concluding that the Plaintiff had failed to exhaust its administrative remedies prior to the commencement of this litigation, the Wayne Circuit (1) granted the City's motion for summary judgment on April 19, 2010, and (2) denied the Plaintiff's motion for reconsideration during the following month. (*See* Tr. of Mar. 26, 2010 Hrg. at 10:21-11:8, Copy at Ex. 2 to Pl.'s Resp. ("You need to go through your administrative process. Had you brought this as an appeal because they were unreasonable in denying your permit so that you could open your business, you appeal it to me; then I listen to all this stuff. I can't do it on this basis. . . . I have no jurisdiction over this.")).

During the pendency of the second lawsuit, the Plaintiff again retained architects and engineers to submit plans that, they contended, would address the concerns raised in the 2007 inspector's report and the 2008 URS report. Believing that several of the areas of concern had not been adequately - if at all - addressed, the City's Economic & Community Development Department rejected the Plaintiff's plans, and declined to issue the requested permits to begin renovation. (*See* Plan Review Denials dated June 3, 2009; Sept. 30, 2009; Dec. 2, 2009, Copies at Exs. 14, 16, and 17 to Def.'s Mot. for Summ. J.). The City retained URS to review the Plaintiff's submissions to determine if its plans for the balconies, guardrails, and stairways answered the concerns previously raised. URS concluded that the new plans failed to ensure that the proposed repairs would be sufficient to render these structures safe and sound, and, in some instances, failed to propose any repairs at all.

In March 2010, the City notified the Plaintiff that (1) based upon the inspections performed in February 2008, March 2009, and March 2010, buildings D and E had been deemed to be

5

dangerous, and (2) a hearing would be scheduled at which it would be required to show cause why those structures should not be demolished. During the following month, the City transmitted similar notices with respect to the restaurant and pool building and buildings A, B, and C. By that time, the estimated cost to repair all of the buildings was $1,856,434, and the state equalized value of the property had declined to $400,000. In each case, the inspections (1) revealed that the originally identified defects still remained, and (2) uncovered many additional problems, including improper and inadequate repairs that had been performed without the required permits.

A public demolition hearing was held before the dangerous buildings hearing officer of the Economic & Community Development Department on July 14, 2010. *See* Mich. Comp. Laws § 125.540. This hearing, which lasted for six hours, included testimony by the Plaintiff's counsel, its owner (Joseph Nofar), and its architects and engineers. The Plaintiff included the expert reports of consulting engineers Ahmad & Associates, LLC, and McDowell & Associates, each of which strongly disputed the findings of URS and the City's inspector. After considering this testimony, as well as the testimony of the City's inspector and documents and reports submitted by both sides, the hearing officer determined that - notwithstanding the Plaintiff's experts' representations to the contrary - buildings A, B, C, D, and E were all dangerous buildings within the meaning of every provision of Mich. Comp. Laws § 125.539. A supplemental hearing was held during the following month to address the restaurant and pool building, which was determined to be dangerous within the meaning of eight of the ten provisions of Mich. Comp. Laws § 125.539. In each case, the hearing officer concluded that the buildings required immediate demolition.

The City's Demolition Appeal Board ("DAB") conducted a hearing to review both of these orders in September 2010. The City and the Plaintiff (represented by counsel) each presented

evidence in support of their respective positions. The Plaintiff did not contest the demolition of buildings D and E. The opposing experts sharply disagreed about the overall condition of the other buildings - especially as it related to the structural soundness of the balconies - and whether the cost to repair the buildings would exceed their market value. The DAB then adjourned the hearing for sixty days in order to give the Plaintiff an opportunity to submit a "master plan" that would, *inter alia*, describe how (1) each requirement of the City's most recent inspection reports would be satisfied, and (2) the restorations and renovations for the entire project would be funded. The DAB resolution specified that, "[i]f all of the above conditions are not satisfied within 60 days from the date of this hearing, all buildings will be ordered demolished." (Amended Resolution of the Demolition Appeal Board, Copy at Ex. 35 to Def.'s Mot. for Summ. J.). The DAB held a follow-up hearing at the end of the sixty day period (on December 2, 2010). When the Plaintiff did not submit any of the required items, the DAB (1) denied its request for an additional thirty to forty-five days in which to satisfy the Amended Resolution, and (2) ordered all of the remaining buildings to be demolished. Twenty days later, the instant litigation was initiated by the Plaintiff in the Wayne Circuit and was subsequently removed by the City to this Court on the basis of its federal question jurisdiction. 28 U.S.C. §§ 1331, 1441.

II.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary

judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

8

produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

III.

The initiating document in this case is entitled "petition for order of superintending control and for temporary restraining order[5] re: resolution and order for demolition dated December 2, 2010." The pleading recites three counts. Count I, which was filed pursuant to 42 U.S.C. § 1983, alleges that the City had violated the Plaintiff's rights under the United States and Michigan constitutions in the following manner: (1) the right to be free from an unconstitutional taking of property pursuant to the Fourth Amendment of the United States Constitution;[6] and (2) the right to due process guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 11 and 17 of the Michigan Constitution. Count II seeks preliminary and permanent injunctive relief enjoining the City from implementing the order of demolition. Count III seeks a declaration that any action taken by the City in the absence of an express judicial authorization would amount to an unconstitutional taking.

Before beginning its analysis, the Court must first address the threshold issue of which actions and determinations are properly before the Court. The City argues that the administrative process and decisions which were the subject of the Plaintiff's 2009 lawsuit - to wit, the refusal to accept various repair plans submitted by the Plaintiff and subsequent denials of permit requests - are barred by the doctrine of res judicata, noting that the Wayne Circuit entered an order of

---

[5] Although the title refers to a request for a temporary restraining order, the Court notes that this relief was neither requested in the body of the document nor was it made the subject of a separate motion for a temporary restraining order.

[6] The Court notes that it is the Fifth Amendment - not the Fourth Amendment - that addresses the taking of private property for public use without just compensation.

summary judgment in favor of the City in that case. The Plaintiff disagrees, arguing that the cited doctrine of res judicata does not apply to this controversy because the determination by the state court in that case was not a decision on the merits. Rather, the Plaintiff submits that the state court rendered its decision based upon a finding of lack of jurisdiction because of the failure of the Plaintiff to have exhausted its administrative remedies. The Court need not address this dispute as to whether the determination by the Wayne Circuit will or does serve as a barrier to a review of these allegations by this Court. It is clear that the Plaintiff still has not exhausted its administrative remedies with respect to decisions that would have been properly appealed to the Building Board of Appeals ("BBA"), as opposed to the DAB. According to a municipal ordinance in Dearborn, an owner may appeal the decision of a building official by filing an appeal with the BBA within thirty days of the adverse decision. Dearborn, Mich., Code of Ordinances § 5-27(12). An owner who is aggrieved by an adverse decision of the BBA may seek judicial review of the decision by filing an application for review within twenty days of the filing of the board's decision. *Id.* § 5-27(15). It is not clear whether the Plaintiff ever sought an appeal to the BBA, but, in any event, it did not seek any judicial review of the BBA's determination within the designated time period, as required by the Code. Because the Plaintiff failed to exhaust its administrative remedies with respect to the BBA, this Court lacks jurisdiction to consider and evaluate those claims. *See, e.g.*, *Nelson v. City of Pontiac*, No. 269536, 2007 WL 284333, at *1 (Mich. Ct. App. Feb. 1, 2007) (unpublished) ("The doctrine of exhaustion of administrative remedies requires that where a remedy before an administrative agency is provided, a party must seek such relief before petitioning the court." (citing *Trever v. City of Sterling Heights*, 195 N.W.2d 91, 92 (Mich. Ct. App. 1972))). This analysis applies with equal force to the Plaintiff's constitutional claims that arise from the same proceedings.

10

*See, e.g.*, *Salmon v. City of Three Rivers*, No. 193290, 1997 WL 33352800, at *2 (Mich. Ct. App. Apr. 11, 1997) (where court lacked jurisdiction over complaint for superintending control for failure to timely exhaust administrative remedies, it also lacked jurisdiction over constitutional claims that, in essence, were appeals of agency's decision). On the other hand, there is no dispute that the Plaintiff did exhaust its administrative remedies with respect to the demolition determination; that decision, therefore, is properly before the Court.

Mich. Comp. Laws §§ 125.538 - 125.542 set forth the procedures that a municipality must follow if it intends to demolish a dangerous building. *See also* Dearborn, Mich. Code of Ordinances §§ 5-26 (adopting Michigan building, residential, rehabilitation, plumbing, and mechanical codes), 5-27 (additions, insertions, and changes to the Michigan building code). Section 125.539 defines the term "dangerous building"as a building or structure that has one or more of several enumerated defects or conditions. The parties dispute whether the hotel buildings were dangerous as defined by this provision. Section 125.540 sets forth the requirements of notice to the building's owner. There is no allegation of defective notice here. Section 125.541 sets forth the procedures for hearings before the dangerous buildings hearing officer and the DAB. Finally, § 125.542 provides that an "owner aggrieved by a final decision or order of the legislative body or the board of appeals under section [125.541] may appeal the decision or order to the circuit court by filing a petition for an order of superintending control within 20 days from the date of the decision." *See also* Dearborn, Mich., Code of Ordinances § 5-27(27) ("An owner aggrieved by a final decision or order of the city council or the demolition board of appeals under subsection (23) may appeal the decision or order to the circuit court by filing a petition for an order of superintending control within 20 days from the date of the decision.").

The parties' primary dispute is whether the buildings in question were dangerous, as defined by § 125.539. The DAB concluded that the buildings were dangerous under every single provision of this statute. The Plaintiff counters by arguing that the evidence conclusively shows that these buildings were not dangerous. The parties have framed the relevant question differently. The Plaintiff submits that a review of the entire record reflects the existence of a substantial disagreement among the various experts as to the condition of the property. Further, the Plaintiff maintains that these differences are sufficient to raise genuine issues of a material fact which must be resolved by the trier of fact. As the City points out, the Plaintiff's argument - even if true - is insufficient to meet its burden regarding its complaint for superintending control. Rather, the Plaintiff - in order to defeat the currently pending motion for summary judgment - must demonstrate that a genuine issue of a material fact exists as to whether the City's determination (to wit, that the hotel was dangerous) was unauthorized by law or not supported by competent, material, and substantial evidence based upon the whole record. *See, e.g.*, *Cole's Home & Land Co., LLC v. City of Grand Rapids*, 720 N.W.2d 324, 327-28 (Mich. Ct. App. 2006) (quoting Mich. Const. 1963, art. 6, § 28). This is a significantly higher burden.

Under Michigan law, a judicial review of the factual findings by an administrative agency is limited to determining whether its determinations were supported by substantial evidence. *In re Payne*, 514 N.W.2d 121 (Mich. 1994). Substantial evidence is "the amount of evidence that a reasonable mind would accept as sufficient to support a conclusion. While it consists of more than a scintilla of evidence, it may be substantially less than a preponderance." *Id.* at 128 (citations omitted).

The parties have gone to great lengths to present and highlight the relevant findings of

12

various expert reports regarding the condition and potential of rehabilitation of the subject buildings. The Court need not delve into these reports in great detail to reach the conclusion that the DAB's determination that the buildings were dangerous was supported by substantial evidence. The Plaintiff points to numerous excerpts from the hearing before the DAB on September 30th [7] which, it contends, demonstrate the "stark contrast" and the "substantial disagreement" between the parties' expert witnesses. It is evident that the Plaintiff's experts firmly believe that the buildings, though in disrepair, could be rehabilitated to be brought within all of the relevant building codes, and that it is not necessary to demolish the building. On the other hand, the DAB, after looking to the reports of the City's inspector and URS, expressed deep skepticism about the soundness of these beliefs as well as the Plaintiff's ability to finance the project to completion. The DAB was also concerned about the lack of specific detail in the previously-submitted plans and the apparently unsatisfactory nature of the prior repairs that had been undertaken. Nevertheless, the DAB allowed the Plaintiff a period of sixty days to come up with a "master plan" that would address its concerns. Neither the Plaintiff nor its experts expressed any belief that the suggested sixty-day period would constitute an insufficient amount of time in which to prepare a "master plan." At the end of this authorized period, the Plaintiff had not completed any of the tasks that were outlined in the DAB's resolution, and it seems that little, if any, progress had been made. Thus, in accordance with the terms of its prior resolution, the DAB properly ordered the demolition of all of the buildings. (*See* Amended Resolution of the Demolition Appeal Board, Copy at Ex. 35 to Def.'s Mot. for Summ. J. ("If all of the above conditions are not satisfied within 60 days from

---

[7] Much of this testimony relates to disagreement with the City's rejection of various submitted plans and permit requests. As noted above, these actions are not before the Court.

the date of this hearing, all buildings will be ordered demolished.")).

Moreover, by the City's estimate, the cost to repair the buildings vastly exceeded their value. Under Mich. Comp. Laws § 125.541(4), "[i]f the estimated cost of repair exceeds the state equalized value of the building or structure to be repaired, a rebuttable presumption that the building or structure requires immediate demolition exists." Because the Plaintiff did not present any cost estimate to complete the project, it failed to rebut this presumption.

For these reasons, the Court concludes that the DAB's determination was based upon substantial evidence and must be affirmed. The Court again notes that the existence of disagreement between the parties is insufficient to meet the Plaintiff's burden. Hence, the Plaintiff's request for superintending control is denied.

## IV.

The Court now turns to the Plaintiff's constitutional claims, in which it argues that the City's actions (1) have been so egregious that they constitute an abuse of their municipal authority, as well as a taking of its property without just compensation in violation of the Fifth and Fourteenth Amendments; and (2) have denied it substantive and procedural due process under the Fifth and Fourteenth Amendments. To establish a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) [that was] caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). The Court will address each claim in turn.

The essence of the Plaintiff's takings claim appears to be the loss of its commercial use of the hotel since 2008. As previously noted, however, the condemnation order and permitting process

are not before the Court. Moreover, as the City points out, the demolition of a dangerous nuisance does not constitute a taking. *E.g.*, *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491 n.20 ("[S]ince no individual has a right to use his property so as to create a nuisance or otherwise harm others, the State has not 'taken' anything when it asserts its power to enjoin the nuisance-like activity."); *id.* at 492 n.22 ("Courts have consistently held that a State need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance."); *Davet v. City of Cleveland*, 456 F.3d 549, 553 (6th Cir. 2006) (affirming district court's conclusion that "takings claim failed because '[d]emolition, compliant with local law and procedure, in order to enforce building codes or abate a public nuisance does not constitute a taking as contemplated by the federal and Ohio Constitutions.'"); *Ypsilanti Charter Twp. v. Kircher*, 761 N.W.2d 761, 775 (Mich. Ct. App. 2008) (applying *Keystone* under the United States and Michigan constitutions, and noting that the latter has been interpreted as being coextensive with the former).

In its response, the Plaintiff does not address the nuisance exception to the takings analysis, and instead presents a standard regulatory taking argument. To the extent that this argument is premised on the purported bad faith denials of its permit applications, it is not properly before the Court. To the extent that this argument relates to the demolition order, it fails for the reason outlined above.

The Plaintiff's procedural and substantive due process arguments focus almost entirely on the condemnation order and denials of permit requests, and, to that extent, are not properly before the Court. Moreover, the above analysis makes it abundantly clear that the order to demolish the buildings was made neither arbitrarily nor capriciously, as would be required to establish a

substantive due process violation. *See, e.g.*, *Davet*, 456 F.3d at 552 (affirming district court's conclusion that "the substantive due process claim failed because [Plaintiff] could not establish that the city's actions (taken pursuant to a valid condemnation order and in accordance with the procedures mandated by city and state law) 'shock[ed] the conscience' or were 'arbitrary and capricious'"); *Mettler Walloon, LLC v. Melrose Twp.*, 761 N.W.2d 293, 304 (Mich. Ct. App. 2008) ("[W]hen evaluating municipal conduct vis-à-vis a substantive due process claim, only the most egregious official conduct can be said to be arbitrary in the constitutional sense. . . . To sustain a substantive due process claim against municipal actors, the governmental conduct must be so arbitrary and capricious as to shock the conscience.").

The Plaintiff's procedural due process claim is also premised entirely on the denials of its applications for permits. With respect to the demolition proceedings, the Plaintiff makes no allegation that he was not provided with proper notice of all hearings and a right to be heard by an impartial decision-maker. *See Davet*, 456 F.3d at 552 (affirming district court's determination that the "procedural due process claim failed because the [board of building standards] had given him ample notice and an opportunity to be heard"); *Mettler Walloon*, 761 N.W.2d at 313 ("[P]rocedural due process requires that a party be provided notice of the nature of the proceedings and an opportunity to be heard by an impartial decision maker at a meaningful time and in a meaningful manner."). By all accounts, the demolition hearing officer and the DAB complied with all of the notice and procedural requirements set forth in Mich. Comp. Laws §§ 125.540 and 541.

Because the Plaintiff has not demonstrated that any constitutional violation has occurred, it has failed to establish the first prong of the § 1983 analysis. *See Sigley*, 437 F.3d at 533. Therefore, the City is entitled to the entry of a summary judgment with respect to Count I of the

complaint.

V.

Because the Plaintiff's claims do not succeed on the merits, it is not entitled to any injunctive relief under Count II of the complaint. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (in considering request for preliminary injunction, courts weigh (1) whether moving party demonstrates strong likelihood of success on merits; (2) whether moving party would suffer irreparable injury without order; (3) whether requested injunctive order would cause substantial harm to others; and (4) whether public interest would be served by issuance of injunctive order; if first factor is dispositive, court need not consider remaining factors); *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 602 (6th Cir. 2006) (permanent injunction requires success on merits plus showing that plaintiff will suffer continuing irreparable injury for which there is no adequate remedy at law). Moreover, because the Court has rejected the Plaintiff's constitutional claims, it is not entitled to the declaratory relief that it seeks to obtain in Count III.

VI.

For the reasons that have been set forth above, the City's motion for the entry of a summary judgment (ECF 10) is granted in its entirety.

IT IS SO ORDERED.

Date: March 30, 2012                                s/Julian Abele Cook, Jr.
                                                    JULIAN ABELE COOK, JR.
                                                    U.S. District Court Judge

17

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 30, 2012.

s/ Kay Doaks
Case Manager
